BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA VALLIERE (DCBN 439353)
Chief, Criminal Division

JULIE D. GARCIA (CABN 288624)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6758
Facsimile: (415) 436-7234
Julie.Garcia@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:17-mj-70643-MAG |
| Plaintiff, | UNITED STATES' MOTION TO REVOKE RELEASE ORDER AND TO ORDER RYAN MICHAEL SPENCER DETAINED |
| v. | |
| RYAN MICHAEL SPENCER, | Date: May 9, 2017<br>Time: 11:00 a.m. |
| Defendant. | |

**CONTENTS**

I.   INTRODUCTION ....................................................................................................2

II.  FACTUAL AND PROCEDURAL BACKGROUND................................................3

    A.   The initial investigation reveals that Petersen possesses and distributes child pornography. ...........................................................................................................3

    B.   Petersen admits to possessing child pornography, receiving child pornography from Spencer, and creating and distributing child pornography using children he babysits..................................................................................................................4

    C.   Kik messages show that Petersen and Spencer were producing child pornography using children they babysat and distributing it to each other. .......................5

    D.   The Government moves for detention based on the danger Petersen and Spencer present to the community. ......................................................................10

    E.   Judge Corley orders Petersen and Spencer released, and the Government appeals..................................................................................................................11

III. STANDARD OF REVIEW ....................................................................................12

IV.  LEGAL STANDARD.............................................................................................12

V.   ARGUMENT ..........................................................................................................13

    A.   There is probable cause to believe that Petersen and Spencer produced and distributed child pornography, raising the presumption that there are no conditions of release that can reasonably assure the safety of the community..................13

    B.   The nature and circumstances of the offense indicate that Petersen and Spencer produced and distributed child pornography, in addition to possessing between 10,000 and 100,000 images and videos containing child pornography...............14

    C.   The weight of the evidence is overwhelming. .....................................................15

    D.   The Defendants' history and characteristics show that they cannot be trusted. ................15

    E.   The Defendants pose a serious danger to others if released, and home confinement cannot adequately protect the community. ......................................16

VI.  CONCLUSION.......................................................................................................18

1  PLEASE TAKE NOTICE that on May 9, 2017, at 11:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, the United States will move the Court for an order remanding Ryan Michael Spencer, the Defendant in the above-captioned matter, and Bryan Petersen, the Defendant in the related case captioned *United States v. Bryan Petersen*, No. 3:17-70631-MAG, to the custody of the United States Marshal pending trial on the crimes with which they are charged.

The United States' motion is brought under 18 U.S.C. § 3145(a)(1) on the grounds that clear and convincing evidence establishes that both Defendants are a danger to the community.

## I. INTRODUCTION

Last Wednesday, the FBI executed a search warrant for evidence of the possession of child pornography at the home of Defendant Bryan Petersen in Tiburon, California. A preliminary review of Petersen's devices, along with Petersen's own statements, revealed that Petersen was not only in possession of between 10,000 and 100,000 images of child pornography, but was also actively producing pornographic images of children he was babysitting, and distributing those images to Defendant Ryan Spencer—a man doing the same thing to children he was babysitting in Aptos. Kik messages exchanged between Petersen and Spencer show that the men solicited jobs as babysitters, camp counselors, and teachers in order to gain access to children; that they sought physical contact with the children and encouraged them to remove their clothes; that they took photos of the children entrusted to their care while the children were naked; and that they shared those images with at least each other.

Given the evidence that Petersen and Spencer were actively victimizing children, the agents arrested Petersen on the spot, and he was charged in a Complaint with possession of child pornography later that day. The day after that, following the execution of a search warrant at Spencer's residence in Aptos, he, too, was arrested and charged with possession of child pornography.

The Government sought to have both Defendants detained pretrial based on the danger they present to the community. On Tuesday, May 2, 2017, however, the Honorable U.S. Magistrate Judge Jacqueline Corley ordered both men released. The government now respectfully appeals those decisions, because Petersen's and Spencer's actions show that they cannot be trusted and that they present a danger to the community under 18 U.S.C. § 3142. In addition, in this Motion, the Government argues that, based on the facts presented herein, the Government has established probable cause to

believe that both men produced and distributed child pornography, raising the statutory presumption that there are no conditions of release that can reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(e)(2), (f)(1). Because the Defendants cannot rebut that presumption, and because, in any case, the Government has shown by clear and convincing evidence that there are no conditions of release can reasonably assure the safety of the community, the Government now moves for an order revoking the release orders and detaining both men.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The initial investigation reveals that Petersen possesses and distributes child pornography.

In November 2015, the FBI learned of an individual (CW#1) who had reported to law enforcement that Petersen used the internet to view and receive child pornography. Declaration of Julie Garcia ("Garcia Decl.") Ex. A (Petersen Compl.) ¶ 8. CW#1 stated that, in 2013, Petersen showed CW#1 the contents of a local folder on his laptop that contained "hundreds of pictures and videos of adolescents younger than 18 engaging in sexual acts." *Id.* ¶ 9. CW#1 further stated that Petersen had told CW#1 that he had met a minor online and had exchanged child pornography with that minor using Dropbox accounts. *Id.* ¶ 10. CW#1 stated that, at the time, Petersen promised not to engage in that kind of behavior again. *Id.*

Later in 2013, CW#1 traveled to California to visit Petersen. During that visit, Petersen gave CW#1 the passwords to his laptop, his Gmail account, and his Dropbox account associated with the same email address. While CW#1 was using the Gmail account to send emails, s/he noticed a video sent from the Gmail account that depicted Petersen's three- or four-year-old brother standing naked and then dancing around at Petersen's encouragement. *Id.* ¶ 11. When CW#1 asked Petersen about the video, Petersen admitted that he had sent it to the same minor with whom he had exchanged child pornography on Dropbox. *Id.* Once more, Petersen promised CW#1 that this would not happen again.

In summer 2015, CW#1 was logged into the Gmail account and noticed an email from Dropbox stating that files had been uploaded. *Id.* ¶ 12. Given Petersen's used of Dropbox in the past, CW#1 became concerned and logged into the Dropbox account, where s/he found between 100 and 500 images of child pornography. *Id.* In one video, a prepubescent boy was performing oral sex on an adult male.

1  *Id.*  Some of the images and videos were of the children masturbating; others were of children engaged
2  in sexual acts with adults, including anal and digital penetration.  *Id.*

3  Also in 2015, while logged into the Gmail account, CW#1 saw emails in which Petersen and a
4  juvenile victim (JV#1) exchanged photos of their penises.  *Id.* ¶ 13.

5  In August 2016, a search warrant was served on Dropbox for the content and other information
6  related to the Dropbox account.  *Id.* ¶ 15.  The information received from Dropbox showed that
7  hundreds of files were added to and deleted from the Dropbox in June and July of 2015, and that folders
8  used to categorize the files included "Misc. Boys," "boys pics," and "Best Videos."  *Id.* ¶ 16.  All files in
9  the Dropbox account were deleted on July 30 and 31, 2015.  *Id.*  On August 4, 2015, however, twelve
10 video files were restored to the "Best Videos" folder.  *Id.* ¶ 17.  The names of the restored files included
11 "Brothers in bed," "Canadian_boy_cums_on_his_pillow," and "Young Solo."  *Id.*  Nine of the twelve
12 videos constituted child pornography.  *Id.*  For example, one video depicted a fully nude prepubescent
13 male lying on his back with his legs spread open and lifted toward his shoulders while an older male
14 anally penetrated him.  *Id.*  Another depicted a fully nude prepubescent male masturbating.
15 Approximately one minute and 20 seconds into that video, the boy inserts what appears to be a stick of
16 deodorant into his own anus.  *Id.*

17 **B.    Petersen admits to possessing child pornography, receiving child pornography from Spencer, and creating and distributing child pornography using children he babysits.**
18

19 On April 26, 2017, the FBI executed a search warrant at Petersen's residence in Tiburon,
20 California.  Petersen Compl. ¶ 19.  Petersen was present and agreed to be interviewed.  *Id.*  During the
21 interview, Petersen admitted that he possessed images and videos containing child pornography, and that
22 he had also received and distributed such materials.  Garcia Decl. Ex. B (Spencer Compl.) ¶ 8.

23 Petersen stated that he has known the above-mentioned juvenile victim, JV#1, for several years,
24 and that the two have exchanged photos of their penises.  Petersen Compl. ¶ 20.  Petersen further stated
25 that he had recently received via email from JV#1 a video of JV#1's younger brother, Juvenile Victim
26 #2 (JV#2), masturbating in a bathroom.  *Id.* ¶ 21.  Petersen stated that JV#1 claimed to have recorded
27 JV#2 without JV#2's knowledge.  *Id.*  Petersen stated that he believes JV#2 is approximately ten years
28 old.  *Id.*

A preliminary review of a laptop seized from Petersen's room revealed a video file with JV#2's first name in the title. Petersen Compl. ¶ 24. The video, which appeared to be surreptitious, depicted a prepubescent male masturbating in a bathroom. *Id.*

Petersen also stated that he had received child pornography from individuals he had met on the internet, including Defendant Ryan Michael Spencer. Spencer Compl. ¶ 11. Petersen explained that, approximately 12 to 18 months prior, he had ordered an external hard drive from Amazon.com and had it delivered to Spencer, who—based on the two Defendants' prior agreement—then filled the hard drive with images and videos of child pornography. *Id.* At some point thereafter, Petersen traveled to Aptos, California, where he met Spencer and retrieved the hard drive. *Id.* Petersen estimated that the hard drive contained between 10,000 and 100,000 images and videos. Garcia Decl. Ex. C (audio file of April 26, 2017 interview of Petersen).[1]

Petersen stated that Spencer's primary source of income is from babysitting children and that Spencer takes photos and videos of the children while they are naked. *Id.* ¶ 13. Petersen stated that he had received many images of naked prepubescent children from Spencer via the Kik application. *Id.* Petersen noted that Spencer's preference is for children approximately four to eight years old. *Id.* Petersen further stated that Spencer claimed that he had masturbated one child while the child was asleep. *Id.* ¶ 14.

Petersen also admitted that he himself had taken photographs of the children he babysat while the children were naked, and that he sent those photos to Spencer. Garcia Decl. Ex. C. Petersen stated that he organized those images on his hard drive using subfolders with the children's names. *Id.* Petersen also stated that both he and Spencer had experience with computer programming, and that Spencer was experienced in obtaining materials from the "dark web." *Id.*

    **C.**    **Kik messages show that Petersen and Spencer were producing child pornography using children they babysat and distributing it to each other.**

On April 27, 2017, the FBI executed a search warrant at Spencer's residence. Spencer Compl. ¶¶ 21, 24. In an interview, Spencer admitted that he looked at illegal images of children on the internet.

---

[1] Due to the sensitive nature of the information in this interview, including personally identifiable information relating to the minor victims, the Government submits this exhibit under seal.

MOTION TO REVOKE RELEASE ORDER AND TO ORDER RYAN MICHAEL SPENCER DETAINED
3:17-MJ-70643-MAG                                                       5

*Id.* ¶ 22.

The Agents seized Spencer's devices, including an iPhone. Spencer Compl. ¶ 24. A review of available Kik messages exchanged between Spencer and Petersen from April 1 to 26, 2017, revealed that the two men actively solicited babysitting jobs—Petersen in Tiburon and Spencer in Santa Cruz—in order to have physical contact with children, to take lewd and lascivious photos of them, and to share those photos with each other. In one Kik exchange, for example, Petersen reported that one of the children he was babysitting was "laying on my lap fondling himself." Ex. E (redacted Kik messages).[2] Petersen promised that he would "send pics" the next day. *Id.* Spencer asked whether Petersen had "anything naked," to which Petersen responded, "Some." *Id.* Petersen then sent Spencer a photograph of two prepubescent boys naked in a bathtub, with penis and buttocks visible, and additional photographs of prepubescent boys changing into their pajamas. *Id.*; *accord* Spencer Compl. ¶ 15. The following exchange then took place:

**PETERSEN**: Well?

**SPENCER**: Hot.

How many pics did you take?? I want em all lol those two are smoking.

**PETERSEN**: Haha

**SPENCER**: Nice thou

Was it fun?

**PETERSEN**: Yup.

[JV#3] is super cuddly

[JV#4] had to be helped

[JV#3] got hurt in the bathtub so I had a good excuse to be in there and [JV#4] didn't care.

[. . .]

---

[2] The Government submits these messages under seal because they contain images of the minor victims in this case. The explicit images have been blurred, and the children's names have been redacted, but in some images the minors' faces are recognizable.

| | | |
|---|---|---|
| 1 | **SPENCER:** | Well any other pics u got I would love cause I love those 2 and I'm |
| 2 | | gunna go to work in an hour |
| 3 | **PETERSEN:** | Remind me tonight |

In a subsequent exchange, Spencer sent Petersen several images of prepubescent boys changing after a swim class, including several in which the boys' penises were visible. One of the images appears to be cropped in order to focus on the boy's body. *Id.* Shortly thereafter, Spencer sent Petersen sixteen images of two prepubescent boys changing their clothes in what appears to be a camp cabin. The boys were attempting to change their clothes beneath towels; and, in some, the towels fell, showing the boys' penises. When he sent the images to Petersen, the following exchange occurred:

| | | |
|---|---|---|
| 10 | **SPENCER**: | Wow. |
| 11 | | 2 cute boys |
| 12 | | the white one I saw his stuff briefly but it's hard because he is |
| 13 | | good at changing |
| 14 | **PETERSEN**: | You know which one I prefer :p |
| 15 | | Cute though |
| 16 | | Did he change in his bunk or did he sleep naked |
| 17 | **SPENCER**: | In his bunk today yesterday no |
| 18 | **PETERSEN**: | Cool |

In other exchanges, Spencer described his attempts to get the children he was babysitting to become more comfortable being naked with him, and his attempts to spend time in bed with them:

| | | |
|---|---|---|
| 21 | **SPENCER**: | With [JV#5] and [JV#6] I guess [JV#5] is kinda a nudist but not |
| 22 | | with me bummer |
| 23 | **PETERSEN**: | Why not? That's too bad |
| 24 | **SPENCER**: | He I think will like get more comfortable |
| 25 | | He is pretty cuddly and cute thou |
| 26 | | Sorry I didn't get new pics |
| 27 | | He wears a diper [sic] to bed but went in bathroom to change |
| 28 | | I got to see him in his diper [sic] and cuddle him on couch and in |

| | | |
|---|---|---|
| 1 | | bed for a while |
| 2 | | I'm hoping I can sit for them over summer |

3  The Kik messages make clear that the men were soliciting babysitting jobs specifically for the
4  purpose of victimizing children.  In one exchange, for example, Petersen lamented to Spencer that he
5  had recently turned down three babysitting jobs, leading Spencer to note that there were plenty of
6  families in Santa Cruz that they could "share":

| | | |
|---|---|---|
| 7 | PETERSEN: | I turned down like 3 babysitting families recently |
| 8 | | Because I leave in july |
| 9 | SPENCER: | :( to where? |
| 10 | PETERSEN: | UC Santa Cruz |
| 11 | SPENCER: | Oh cool |
| 12 | | You can get new families |
| 13 | | Lol |
| 14 | | Lots of local Santa Cruz stuff |
| 15 | | Plus you can share/we can |

16  The Kik messages also reflect that, in addition to the child pornography they were producing, the
17  two men exchanged child pornography created by JV#1, with whom they were in contact.  In one
18  exchange, the men discuss a child pornography video that JV#1 created by hiding a "spycam" to capture
19  his eleven-year-old brother masturbating:

| | | |
|---|---|---|
| 20 | PETERSEN: | I got something to share |
| 21 | | [JV#1]'s brother like 11 via spycam |
| 22 | SPENCER: | Share |
| 23 | | He took a spycam vid of his brother? That's hot |
| 24 | | His brother is hot |
| 25 | PETERSEN: | I'll probably wait til I get home |
| 26 | SPENCER: | So can't share rn ☹ |
| 27 | | Okay |
| 28 | PETERSEN: | It's on my laptop now |

| | | |
|---|---|---|
| 1 | | If it was easier yeah |
| 2 | | He's also super paranoid about it |
| 3 | | Made me swear to a 3 page document of rules about not sharing |
| 4 | | And insists on me trying my best to return the favor with a video of |
| 5 | | [JV#7]. |
| 6 | **SPENCER:** | lol is [JV#7] your brother? |
| 7 | | But remember I'm exempt cause I know [JV#1] too |
| 8 | | That is super hot thou |
| 9 | | Can't wait to see it |
| 10 | **PETERSEN:** | [JV#7] is my 11 year old half brother |
| 11 | **SPENCER:** | Ahh |
| 12 | | Spycams are hard to set up |
| 13 | **PETERSEN:** | He stuck it in a trash can and used a toilet paper tube to hide it |
| 14 | | It worked super well actually |
| 15 | **SPENCER:** | Huh |
| 16 | | Like just his bro peeing or? |
| 17 | **PETERSEN:** | Peeing then jerking off |
| 18 | | I didn't watch it really, just skimmed stills |
| 19 | **SPENCER:** | Damn that's hot |
| 20 | | How long?  Does he cum |
| 21 | | Gosh I hope [JV#1] gets more |
| 22 | **PETERSEN:** | A couple minutes – I think he does but can't see it as he sits on |
| 23 | | toilet |
| 24 | | It's the family camera so he doesn't get much opportunity |
| 25 | **SPENCER:** | Ahh so you see his dick and ass thou? |
| 26 | | Bummer |
| 27 | **PETERSEN:** | Yup |
| 28 | **SPENCER:** | Hot? |

MOTION TO REVOKE RELEASE ORDER AND TO ORDER RYAN MICHAEL SPENCER DETAINED
3:17-MJ-70643-MAG                                        9

**PETERSEN:** Looked like it

**D. The Government moves for detention based on the danger Petersen and Spencer present to the community.**

Petersen's initial appearance was on Thursday, April 26, 2017. The Government moved for detention on the ground that Petersen presented a danger to the community. At the time, the Government had not yet arrested Spencer; and, given the exigent circumstances that had led to Petersen's immediate arrest, the facts of the case were still developing. Judge Corley set a detention hearing for May 2, 2017, but ordered Petersen released with conditions over the weekend.

Prior to the hearing, the Government was able to identify some of the minor victims in the Tiburon area. Several of the victims' parents submitted victim impact statements, which are attached to the Garcia Declaration as Exhibit F.[3] In those statements, the minor victims' parents explained how Petersen had deceived them and violated their trust, and how they had reason to believe that Petersen had touched or attempted to touch their children. For example:

- One parent explained that she had fired Petersen as a babysitter after becoming suspicious that he was "grooming" her children for sexual activity. This parent explained how Petersen had actively worked to circumvent limitations that she had placed on her sons' use of the internet and then lied to her about it. One of the children was suffering from depression, and this parent had explained to Petersen why and how she was limiting his screen time—specifically, by leaving the devices in a locked room and using Circle to monitor and restrict internet access in the home. It was only later that this parent discovered that Petersen had been using his cell phone to create wireless hotspots to allow the child to circumvent those restrictions, and that he had secretly given the boy his iPad to use at night. When confronted, Petersen lied about the iPad. The parent later found texts from Petersen on the child's phone, which referenced the boy's sexual orientation, drugs, and the hotspots Petersen had set up. The children informed their mother that Petersen had told them: "If things don't work out with your parents, you can come live with me."

- Another parent explained that Petersen babysat her four-year-old son who is developmentally disabled. During that time, the boy's behavior changed. He began taking out his penis and rubbing it against his father—behavior that the parent says was unprecedented. The boy's teacher advised the parents that the boy had also begun touching his penis at school.

---

[3] These statements are submitted dunder seal due to the sensitive nature of the information they contain relating to the minor victims. The Government has not referred to any sensitive or identifying information in this Motion.

MOTION TO REVOKE RELEASE ORDER AND TO ORDER RYAN MICHAEL SPENCER DETAINED
3:17-MJ-70643-MAG                         10

In addition to the written victim impact statements, several parents of the minor victims attended the detention hearing and made oral statements to Judge Corley.[4]  The parents explained that they had trusted Petersen—a 24-year-old-man—with their young children because he came from a local Tiburon family and seemed to have a great resume:  tutor, national chess champion, teacher, Eagle Scout.  They recounted how Petersen was frequently in the pool with their children, playing "wrestling" games and cuddling with them—physical contact that, at the time, they understandably believed was innocent.  Some of the parents also emphasized that Petersen is very tech savvy, and that any attempt to restrict his access to the internet is bound to fail.

The Government proffered to Judge Corley that it had not yet identified Spencer's victims in the Aptos area and that that was why no victims had been able to submit victim impact statements specifically as to Spencer.  Judge Corley stated that, in light of the evidence that Petersen and Spencer were working together to create and exchange images of the children they babysat, she considered the victim impact statements relevant to both cases.

### E.  Judge Corley orders Petersen and Spencer released, and the Government appeals.

After reviewing the excerpted Kik messages between Petersen and Spencer, hearing from the parents of some of the minor victims, and hearing argument from the Government and the defense, Judge Corley ordered each Defendant released on a $500,000 secured bond and subject to several conditions.  As most relevant here, each Defendant was released subject to these conditions:

- Home confinement with electronic monitoring, and no ability to leave the house except with Pretrial Services' approval and while accompanied by a parent or step-parent.
- No access to the internet or possession of devices that can access the internet.  The parents were ordered to change their Wifi passwords, to ask neighbors to do the same, and to take their devices with them when they leave the house.
- No contact with children or victims.

Judge Corley stayed Spencer's release order until Thursday, May 4, at 11:00 am.  Petersen has been released.  The government now moves for an order to have both Defendants remanded to custody.

---

[4] There is no transcript of the hearing, but a CD containing the audio file from the detention hearing is being submitted to the Court.

MOTION TO REVOKE RELEASE ORDER AND TO ORDER RYAN MICHAEL SPENCER DETAINED
3:17-MJ-70643-MAG                                                11

### III. STANDARD OF REVIEW

On a bail appeal, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990); *see* 18 U.S.C. § 3145(a)(1) (allowing the government to file a motion for an order revoking a Magistrate Judge's release order). The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Koenig*, 912 F.2d at 1193.

### IV. LEGAL STANDARD

When seeking pre-trial detention, the government bears the burden to establish by clear and convincing evidence that "no condition or combination of conditions will reasonably assure … the safety of any other person and the community" if the defendant is released. 18 U.S.C. § 3142(e), (f). But where there is probable cause to believe that a defendant has produced or distributed child pornography in violation of 18 U.S.C. § 2251 or 2252(a)(2), the Court must "presume[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e)(3)(E).

Before the Magistrate Judge, the Government did not argue that this was a presumption case. However, in this Motion, the Government argues that it has established probable cause that violations under § 3142(e)(3)(E) have occurred, and that this is therefore a presumption case.[5]

In such a case, a burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). This presumption is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.). In other words, the presumption is not so weak that whenever the defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* Since a defendant can "always provide the

---

[5] Indeed, Magistrate Judge Corley's comments during the detention hearing implied that she believed the evidence showed that the Defendants had produced and distributed child pornography, and she stated that she was considering the detention motion as if this were a presumption case.

magistrate with *some* reason … a 'bursting bubble' approach might render the presumption virtually meaningless, contrary to Congress's clear intent." *Id.* (emphasis added).

Rather, a defendant can rebut the presumption by "coming forward with some evidence that he will *not* flee or endanger the community if released." *Dominguez*, 783 F.2d at 707 (emphasis added). But even in those cases, "[t]he presumption is not erased." *Hir*, 517 F.3d at 1086. Rather, "the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (citing *Dominguez*, 783 F.2d at 707).

If a defendant puts forward evidence to rebut the presumption in favor of detention, the Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f).

## V.  ARGUMENT

### A.  There is probable cause to believe that Petersen and Spencer produced and distributed child pornography, raising the presumption that there are no conditions of release that can reasonably assure the safety of the community.

At this juncture, Petersen and Spencer are charged only with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). But the evidence shows that this is much more than a straight possession case. The Kik messages Petersen and Spencer exchanged, and Petersen's statements to the FBI, establish probable cause to believe that each of them produced and distributed child pornography in violation of 18 U.S.C. §§ 2251 and 2252(a)(3). Indeed, although exigent circumstances required the Government to charge both men quickly, such that only possession has been charged at this juncture, Judge Corley stated at the detention hearing that, based on the evidence before her, she was treating the case as one involving production and distribution. Because there is probable cause to believe that the

Defendants committed these additional crimes, the Court should presume, subject to rebuttal by the Defendants, that that there are *no* conditions of release that can reasonably assure the safety of the community. 18 U.S.C. § 3142(e)(3)(E).

Even if the Court does not find this to be a presumption case, the Defendants should still be detained because the Government has shown by clear and convincing evidence that the Defendants present a danger to the community.

      **B.**    **The nature and circumstances of the offense indicate that Petersen and Spencer produced and distributed child pornography, in addition to possessing between 10,000 and 100,000 images and videos containing child pornography.**

The nature and circumstances of this offense show that the Defendants present a danger to the community. To begin, the amount of child pornography that the Defendants possessed is staggering. Based on Petersen's statements, the encrypted hard drive that Spencer provided to Petersen is expected to contain between 10,000 to 100,000 images and videos of child pornography—tens of thousands more than the 600 images required to trigger the maximum 5-level quantity-based enhancement under the Sentencing Guidelines. USSG § 2G2.2(b)(7)(D). These photos were created by abusing real children, and their existence causes those children real and continuing harm. The congressional findings underlying the Child Pornography Prevention Act of 1996 show that Congress found little distinction between the harm caused by a distributor of child pornography and a consumer, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Child Pornography Prevention Act of 1996, Pub. L. No. 104–208, § 121, 110 Stat. 3009, 3009–27 (1996) (codified as amended at 18 U.S.C. § 2251). Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* In addition, the existence of child pornography "inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." *Id.*; *see also United States v. Schenberger*, 498 F. Supp. 2d 738, 743 (D.N.J. 2007) (noting that "the mere receipt of child pornography is dangerous and encourages illicit activity," and that "the fact that a defendant is not

charged with abusing a minor is not a bar to detention").

But these Defendants did not stop at possessing child pornography created by others. Rather, they created their own child pornography using children entrusted to their care, and then they distributed it to others. There can be no dispute that, as Congress found, the creation of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251). And the circumstances of the creation and distribution of these images are egregious: The Defendants touched children—some still in diapers— and took naked photos of them when they were at their most vulnerable. Petersen distributed images to and received images from Spencer even though, according to Petersen, Spencer bragged about molesting the children in his care. Both Defendants deliberately sought out work opportunities that gave them access to children for the purpose of abusing those children and trafficking in pornographic images of them. They discussed finding new families so that they could "share" pornographic images of new victims. And they did it all with no regard to the serious harm their actions were causing to dozens of children in their community.

### C. The weight of the evidence is overwhelming.

The government's evidence against both Spencer and Petersen is compelling. In a digitally recorded statement, Petersen admitted that his hard drive contained between 10,000 and 100,000 images and videos of child pornography, and that he had received that pornography from Spencer. Spencer, too, admitted that he looked at illegal images of children on the internet. And the Kik messages the two men plainly show that they were engaged in an ongoing conspiracy to abuse children, create pornographic images of them, and traffic in those images. While this factor is less important than others, *see United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008), it nevertheless weighs in favor of detention.

### D. The Defendants' history and characteristics show that they cannot be trusted.

Both Defendants have built their lives around seeking access to children. Spencer is studying to become a teacher and works as a camp counselor; Petersen is an Eagle Scout who has led overnight camping trips for young boys, and he also works as a tutor and a chess coach. Both set up babysitter profiles on Care.com in order to solicit new business, and at least Spencer also had a profile on

Nextdoor.com. While projecting a veneer of competence and trustworthiness, both Defendants committed the most heinous of crimes: sexual abuse and exploitation of the children in their care. They abused the trust of the parents who allowed the Defendants into their home—and their crimes were surreptitious.

There is no reason to think that the Defendants will change their ways now that they have been caught. Petersen repeatedly promised CW#1 that he would change his ways—but he continued to collect, view, create, and distribute child pornography. And in their statements to the FBI last week, both Defendants claimed that they had recently decided to turn their lives around—but the Kik messages show that they did not. In fact, the most recent Kik messages the two exchanged, which included images of children, were sent at 6:00 am on the day that the search warrant of Petersen's home was executed. Had the FBI waited one more day, there could have been additional victims in this case.

In addition, the statements of the Tiburon victims show that Petersen is deceptive and cannot be trusted to abide by technological restrictions. In particular, as noted above, one victim specifically requested that Petersen help her children abide by restrictions on internet use. Rather than do that, Petersen secretly helped the young child circumvent those restrictions by creating a hotspot and giving the child an iPad, apparently as part of an attempt to "groom" the child for sexual activity.

### E. The Defendants pose a serious danger to others if released, and home confinement cannot adequately protect the community.

Home confinement, even with the conditions imposed by Judge Corley, cannot adequately protect the community from future crimes by the Defendants. The nature of the possession and distribution of child pornography is surreptitious. These crimes can be committed even if the Defendants never step foot outside their homes.

The Government hopes that, during the execution of the search warrants, it located and seized all of the Defendants' devices, but there could easily be other devices ferreted away in the Defendants' homes. Friends and visitors, purposefully or inadvertently, could bring devices to the house. The Defendants could even order new devices for delivery by mail. And by accessing the internet, the Defendants could access and distribute child pornography, including potentially the child pornography that they themselves created, which they may have stored on the cloud—allowing them to revictimize

1 the children in their communities by perpetuating the possession and distribution of these illicit images.

2 As other courts have noted, it is simply "not possible to formulate conditions of release which would completely deprive . . . a defendant of the ability to possess or attempt to possess additional child pornography, 'or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography, or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals." *United States v. Falcon*, No. 06-cr-60090-01, 2007 U.S. Dist. LEXIS 44358 (W.D. La. 2007) (citation omitted and internal quotation marks omitted).  Particularly here, where both Defendants are tech savvy, there is no guarantee that the Defendants will not be able to access the internet.  *See United States v. Schenberger*, 498 F. Supp. 2d 738, 744–45 (D.N.J. 2007) ("Given defendant's computer expertise and police background, this Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities.").

Finally, with respect to at least Petersen (as victims of Spencer could not be present to testify regarding the facts as to him), home confinement cannot adequately protect the community from the Defendant for the additional reason that his home is near several schools, including an elementary school.  Several victims' parents testified about how close the school is to Petersen's home, the likelihood that children would pass his home, and the ease with which Petersen could solicit children from a window, even without leaving the house.

//
//
//
//
//
//
//

## VI. CONCLUSION

The Defendants cannot meet their burden of rebutting the presumption in favor of their pretrial detention. Whatever they and their parents might say, the Defendants' actions speak louder. And even if the Court finds that this is not a presumption case, the Government has shown by clear and convincing evidence that there are no conditions of release that can reasonably protect the community. The Court should order both Defendants detained before trial.

Dated: May 3, 2017                                   Respectfully submitted,

                                                     BRIAN J. STRETCH
                                                     United States Attorney


                                                     /s/
                                                     JULIE D. GARCIA
                                                     Assistant United States Attorney