**Pages 1 - 26**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )        NO. CR 17-00259-CRB
                                 )
BRYAN PETERSEN, ET AL.,          )
                                 )
            Defendants.          )
_____  )
```

San Francisco, California
Tuesday, May 15, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

            ALEX TSE
            United States Attorney
            450 Golden Gate Avenue
            San Francisco, California  94102
     BY:  **JULIE GARCIA**
          **JONAS LERMAN**
          **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant Ryan Michael Spencer:

            IMHOFF AND ASSOCIATES, P.C.
            12424 Wilshire Boulevard  - Suite 700
            Los Angeles, CA 90025
     BY:  **SHANNON DORVALL, ESQUIRE**

            LAW OFFICES OF CHRISTOPHER PARKHURST
            1007 7th Street - Suite 302
            Sacramento, CA 95814
     BY:  **CHRISTOPHER PARKHURST, ESQUIRE**

Reported By:  Pamela A. Batalo, CSR No. 3953, RMR, FCRR
              Official Reporter

<u>**Tuesday - May 15, 2018**</u>                                    <u>**2:05 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

---oOo---

**THE CLERK:**  Calling CR 17-00259, United States vs. Ryan Michael Spencer.

Counsel, please step forward and state your appearances for the record.

**MS. GARCIA:**  Good afternoon, Your Honor.  Julie Garcia and Jonas Lerman for the United States.

**MS. DORVALL:**  Good afternoon, Shannon Dorvall and Christopher Parkhurst -- Shannon Dorvall and Christopher Parkhurst for Mr. Spencer.

**THE COURT:**  Good afternoon.  And let the record show that Mr. Spencer is present.

So this is on pursuant to an order to show cause why Mr. Spencer should not be held in contempt of the Court's most recent order directing him to provide the information or provide the -- actually the decrypting of the -- of certain matters that were found on his computer.

I have looked at the -- some of the communications, as well as the briefing, and it seems to me that there perhaps needs to be, if that's true, a clarification of what the Court has stated.  I thought the order was clear, but there seems to be some misunderstanding, at least lack of clarity, as to what the Court's order was.  So let me provide that to the

1   defendant.

2       What the Court stated, in so many words, was that the

3   defendant should provide the -- either provide the information

4   to decrypt the files or to decrypt the files himself at a given

5   time and location and that the fact that he then either

6   provides the information or decrypts the information cannot be

7   used in any criminal prosecution against him.

8       So that's normally called act-of-production immunity.  I

9   don't know.  Maybe there is some other term for it, but that's

10  the term that the Court is familiar with.  And that's the

11  extent of the immunity and that's the extent of the Court's

12  order.

13      So is there any -- does Defense counsel have any questions

14  about that?  I mean, whether they agree with it or not is

15  another issue, but do they have any -- is there anything

16  unclear in what the Court has stated is the Court's order?

17      **MS. DORVALL:**  Not as to the Court's order itself,

18  Your Honor.  It's more related to the case law regarding

19  act-of-production immunity.

20      There is case law such as *U.S. vs. Hubbell* which suggests

21  that act-of-production immunity necessarily encompasses

22  derivative-use immunity.  So the question that we had was if it

23  were explored further, would he be granted full immunity,

24  meaning both act-of-production and derivative-use immunity, in

25  which case his exposure for if he decided to attempt to decrypt

1    any such device would be substantially limited compared to what

2    it would be now.

3          THE COURT:  I don't know that I -- do you want to

4    state that again so I can follow it?

5        You say that there is some case law that suggests that the

6    act-of-production immunity encompasses some sort of derivative

7    immunity?

8          MS. DORVALL:  Yes, Your Honor.

9          THE COURT:  Well, number one, I'm unaware of that, but

10   it's not -- if the immunity -- if you are right, you're right.

11   I mean, it's one of those things where if you're right, you're

12   right; if you're wrong, you're wrong.  If you're right, you

13   win.  If you're wrong, you don't.  And that's the way that

14   works.

15       But it is the intention of the Court to give what's called

16   act-of-production immunity.  Now, if that -- if there is case

17   law which says well, it also means something else, then that's

18   what the cases say.  I don't know.  I'm unaware of that.

19       Are you aware of this case law?

20         MS. GARCIA:  I'm not, Your Honor.  And as an initial

21   matter, I want to make clear that the Government hasn't offered

22   any form of immunity in this case.

23         THE COURT:  No.

24         MS. GARCIA:  My understanding of the *Hubbell* case is

25   that that was a case dealing with the foregone conclusion

1   doctrine.  The Government tried to get the defendant to produce

2   certain documents arguing that it was a foregone conclusion.

3   The Supreme Court ended up holding no, that it was not a

4   foregone conclusion; therefore, there was some testimonial

5   aspect to the act of production and therefore it could not have

6   been produced -- he couldn't have been required to produce it

7   without immunity.  And that extended to the broader

8   derivative-use immunity.

9       But that's not applicable here where the Court has found

10  that in fact, the act of production would be a foregone

11  conclusion, so the issue of immunity is not reached.

12          THE COURT:  But even if the issue of immunity were

13  reached, it is the view of the Court that the act of production

14  cannot be used.

15          MS. GARCIA:  Yes.  So the Government interpreted your

16  order to mean that perhaps at trial, the evidence that he had

17  admitted -- had unlocked these devices would not be admitted.

18          THE COURT:  That's correct.

19          MS. GARCIA:  And the Government has no issue with

20  that, but I'm not aware of any case law suggesting that that

21  would extend to some sort of full derivative use immunity and

22  that wouldn't make any sense in the context of these

23  proceedings.

24          THE COURT:  Nor mine.

25          MS. DORVALL:  Your Honor, there is one case on point:

1  In Re Boucher.

2          THE COURT:  "In Re" what?

3          MS. DORVALL:  Boucher, B-O-U-C-H-E-R.

4          THE COURT:  B-O-U --

5          MS. DORVALL:  C-H-E-R.

6          THE COURT:  Cite?

7          MS. DORVALL:  I have the Westlaw cite in front of me.

8  It's 2009 Westlaw 424718.  I apologize.  I don't have the more

9  direct cite.

10          THE COURT:  That's all right.  424718.

11          MS. DORVALL:  Yes, Your Honor.

12          THE COURT:  And it's called -- what is the case?  *U.S.*

13  *vs. Boucher*?

14          MS. DORVALL:  *In Re Boucher*.

15          THE COURT:  "In Re."  And where was it decided?

16          MS. DORVALL:  I believe this was out of the Eleventh

17  Circuit, but I am not certain.  But I do not believe it's a

18  Ninth Circuit case.

19          MS. GARCIA:  Your Honor, it's an unpublished opinion

20  from the District of Vermont.

21          THE COURT:  Maybe I can get my trusty law clerk to get

22  it for me now.  We'll have a little pause.

23          MS. DORVALL:  There is also another case, Your Honor.

24  *U.S. vs. Fricosu*.

25          THE COURT:  Pardon?

1          MS. DORVALL:  There is another case, Your Honor, as

2     well.

3          THE COURT:  Yeah?

4          MS. DORVALL:  *U.S. vs. Fricosu*, F-R-I-C-O-S-U.  And

5     cite for that is 841 --

6          THE COURT:  Pardon?  841.

7          MS. DORVALL:  Fed. Supp. 2d 1232.  That's a 2012 case.

8          THE COURT:  And that's a district court case from

9     where?

10         MS. DORVALL:  I apologize, Your Honor.  I don't have

11    that.

12         THE COURT:  Okay.  We'll look at that.

13         MS. DORVALL:  In that case, the Government moved for

14    an order requiring the defendant to produce unencrypted devices

15    and -- oh, I remember.  This is out of Colorado, Your Honor.  I

16    apologize.

17        The Government was relying on information from a

18    co-defendant, and they noted that the defendant was granted

19    full immunity before she was forced to decrypt the device, and

20    that was based on the decryption would result in them finding

21    incriminating evidence against her, so they had to offer

22    immunity prior to requiring her to decrypt the devices.

23         MS. GARCIA:  Your Honor, that's a case in which the

24    Government chose to offer immunity given that in that case, she

25    wasn't actually the target of the investigation.  They didn't

1    care to necessarily pursue the foregone conclusion doctrine

2    argument.  The Government chose to offer immunity in that case.

3    The case doesn't hold that in a case where it is a foregone

4    conclusion, there would be any requirement that a defendant

5    receive immunity.

6              THE COURT:  It seems to me -- I'll read this.  I now

7    have the *Boucher* case in front of me.  Let me read it.

8              (Whereupon, the Court reads the case.)

9              THE COURT:  There is one problem.  I just finished

10   reading this case.  It completely supports the Government's

11   position.

12       What is it in this case that you're -- in the *Boucher* case

13   that you're relying on?  Because it simply says -- number one,

14   it was a foregone conclusion, and that's it.  And that's it.

15       I think the Government's right, it's a foregone

16   conclusion, but I'm going one step further and simply saying

17   just to be on the safe side, the fact is that you can't use his

18   decryption efforts, however they are, against him in a criminal

19   prosecution.  The case says the opposite of what you've said.

20       So tell me in the case what -- what statement do you want

21   me to look at?  What fact do you want me to look at?

22             MS. DORVALL:  At page 4, Your Honor --

23             THE COURT:  Page 4.  Page 4?

24             MS. DORVALL:  Yes.  I believe so.

25             THE COURT:  Well, I have the Westlaw.  You gave me the

1   Westlaw.  I don't know what page 4 is.

2          **MS. DORVALL:**  I believe it is 4 at the Westlaw, so it

3   would be 424722.

4          **MS. GARCIA:**  Your Honor --

5          **THE COURT:**  424720.  Okay.  I have before me 4 --

6          **MS. DORVALL:**  Where the court orders --

7          **THE COURT:**  Pardon?

8          **MS. DORVALL:**  Where the court orders that the

9   Government cannot make use of the act of production to --

10         **THE COURT:**  Wait.

11         **MS. GARCIA:**  Your Honor, I believe she is referring to

12  the very last paragraph of the opinion, which is --

13         **THE COURT:**  The very last paragraph where?

14         **MS. GARCIA:**  The very last paragraph of the opinion

15  beginning, "because Boucher has no act of production" --

16         **THE COURT:**  "Because Boucher has no act-of-production

17  privilege to refuse to provide the grand jury with an

18  unencrypted version of the drive on his computer, his motion to

19  quash the subpoena is denied.  Boucher is directed to provide

20  an unencrypted version of the Z-drive viewed by the ICE agent.

21  The Government may not make use of Boucher's act of production

22  to authenticate the unencrypted Z-drive or its contents either

23  before the grand jury or a petit jury. The Government's

24  appeal" -- I'm sorry.  Have I not --

25         **MS. GARCIA:**  I --

1          **THE COURT:**  What words are we talking about here?

2          **MS. GARCIA:**  I'm not sure exactly what point Defense

3     counsel is trying to make.

4          **THE COURT:**  What do you want me to look at?  Read the

5     statement that you think supports your position.

6          **MS. DORVALL:**  Based on the information I have, I

7     believe that is the one --

8          **THE COURT:**  No.  Read -- what information -- what

9     statement?  I got the case.  I'm looking at the case.  You say

10    the case supports your position.  I read the case.  I think it

11    supports the Government's position, but I can be wrong.

12         So just tell me what it is in the language of the case

13    that supports your position, and I'll look at it.

14         **MS. DORVALL:**  I believe that --

15         **THE COURT:**  What words?

16         **MS. DORVALL:**  I apologize.  I can't point you to a

17    direct line beyond that one.

18         **THE COURT:**  Beyond what one?  Beyond what?  I don't

19    even see it.  It's not here.  And it supports the Government's

20    position completely.

21         **MS. DORVALL:**  It --

22         **THE COURT:**  I mean, it is a Second Circuit case.  It

23    happens to be Judge Sessions, who is the former head of the

24    Sentencing Commission and a well-respected jurist.  Anyway,

25    that's by the by.

1      **MS. DORVALL:**  If it would assist, Your Honor, I would

2  be happy to file additional briefing on this issue.

3      **THE COURT:**  No, no, no.  You've had plenty of

4  opportunity to do that, and your position doesn't make any

5  sense.

6      So it's clear, the Court states your client must turn over

7  this information if he has it and do it forthwith; otherwise,

8  he is held in contempt.  And he will be granted, though not

9  necessary -- nevertheless, so there is no doubt about it, he'll

10  be granted immunity of act of production.

11      So given that, what is your client going to do, which was

12  the position last -- two weeks ago.

13      (Ms. Dorvall and defendant confer off the record.)

14      **MS. DORVALL:**  After consulting with Mr. Spencer, he

15  is, without admitting or denying any ability to decrypt the

16  devices, declining to attempt to decrypt them.

17      **THE COURT:**  All right.  Okay.

18      So based upon that -- well, let me address Mr. Spencer,

19  because I think it is a right that he holds.

20      Mr. Spencer, you have been directed by the Court to use

21  whatever -- to decrypt the devices, provided you have the

22  ability to do so.  Do you understand that?

23      **THE DEFENDANT:**  (Witness nods head.)

24      **THE COURT:**  You have to answer audibly, Mr. Spencer.

25      **THE DEFENDANT:**  Yes, I understand.

1    **THE COURT:**  Okay.  And your counsel has said that you

2  refuse to do so.  Do you understand that?

3    **THE DEFENDANT:**  Yes.

4    **THE COURT:**  Okay.  And is it your desire to refuse to

5  do so?

6    **THE DEFENDANT:**  I --

7    **THE COURT:**  It's up to you.  It's not up to your

8  lawyer.  Your lawyer can -- your lawyer can advise you.

9    **THE DEFENDANT:**  I am refusing to attempt to do so.

10    **THE COURT:**  Okay.  All right.

11    Then I think that the Court will thereupon hold you in

12  contempt, civil contempt.

13    **MS. DORVALL:**  Your Honor, if I may, I believe there is

14  still the issue that the Government has yet to prove his

15  present ability to decrypt --

16    **THE COURT:**  How can they do that?  You tell me how

17  they could do that.

18    **MS. GARCIA:**  Your Honor, if I may --

19    **THE COURT:**  He encrypted -- there is plenty of

20  evidence that he encrypted it.

21    **MS. GARCIA:**  Just to be clear, that's not the

22  Government's burden at this stage.  At the contempt stage, the

23  Government's initial burden is to show that the defendant did

24  not comply with the Court's order and that he failed to comply

25  not based on any good faith and reasonable interpretation of

the order.

    We've established that.  He hasn't complied, and as the Court has pointed out, the interpretation of the order doesn't make any sense.  At that point, the burden shifts to the defendant to explain why he's unable to comply.

    He's completely failed to do that for the Court.  The only thing that they've submitted so far -- first of all, they haven't even said that he doesn't know the passwords.  They are kind of waffling about it, saying he might or he might not.  He's refusing to even tell the Court.

    And then they submitted one academic article about generally people having trouble remembering passwords.

        **THE COURT:**  I -- yeah.  I'm not sitting here thinking -- having an opinion as to whether or not he knows the passwords because you're saying to me even if he knew the passwords, he wouldn't provide it.  That's your response.

    Is that correct, Mr. Spencer?  Even if you know the passwords, you won't respond?  You won't provide it upon advice of counsel?

    (Ms. Dorvall and the defendant confer off the record.)

        **THE DEFENDANT:**  I'm declining to answer on the advice of counsel.

        **THE COURT:**  All right.  Well, the Court will hold you in contempt, whatever that means in this context.  I'm not quite sure.

1          **MS. GARCIA:**  Your Honor, the --

2          **THE COURT:**  If you want to brief the question of

3    remedies, you may do so.

4          **MS. GARCIA:**  We would be happy to do so, Your Honor,

5    if you want.

6       The case law states that the Court has the discretion to

7    impose the type of sanction that's the minimum required to

8    encourage the defendant to comply.

9          **THE COURT:**  There is nothing.  I know of none.

10         **MS. GARCIA:**  Well, in this case, I think, Your Honor,

11   it's true that continuing to place him in custody wouldn't do

12   anything, given that he is already in custody and we anticipate

13   that he will continue to be in custody for a long time.

14      However, in *Bright* and *Ayers*, the cases cited in our

15   brief, the Court imposed a monetary fine every day that the

16   defendant failed to comply.

17      The Government would propose in this case something along

18   the lines of a thousand dollars a day.  In *Bright* and *Ayers*,

19   they did $500.  That was a less-serious case involving IRS

20   documents.  This is a case involving the identification of

21   unknown child victims of molestation.  We think a thousand

22   dollars a day would be an appropriate sanction to encourage his

23   compliance.

24         **THE COURT:**  Does there have to be any showing of

25   financial ability to pay the fine?

1          **MS. GARCIA:**  Not that I'm aware of, Your Honor.

2          **THE COURT:**  Okay.  Well, I will issue some order to

3     that effect.

4          I'm just totally puzzled by a decision made -- let me ask

5     you this question.

6          Have you shared with Defense counsel the evidence that you

7     have in connection with the defendant's criminal charge?

8          **MS. GARCIA:**  Yes, Your Honor.

9          **THE COURT:**  Has there been a sharing of it?

10         **MS. GARCIA:**  Yes, Your Honor.

11         **THE COURT:**  Let me ask the Defense, do you understand

12    what the Government's -- what the Government's -- basically

13    what the Government's case is here?

14         **MS. DORVALL:**  Yes, Your Honor.

15         **THE COURT:**  Have you shared that with your client?

16         **MS. DORVALL:**  Absolutely, Your Honor.

17         **THE COURT:**  Okay.  So, in other words, you're making

18    the decision that he shouldn't in some way cooperate with the

19    Government -- by the way, the basic thrust of why they want the

20    files, as I understand them, is to see whether or not there are

21    any victims who can be identified who then would be -- their

22    parents would be alerted so that they might counsel the victims

23    and help them, if there are such victims.

24         So the purpose here, as I understand it, is not to gather

25    more evidence, incriminating evidence, against your client;

1    rather, it's to attempt to address the harm that is purportedly

2    caused by these images and by --

3              **MS. DORVALL:**  I could address that, Your Honor.

4              **MS. GARCIA:**  And if I may address that briefly, too.

5         First of all, Your Honor, yes, that is one aspect of what

6    we're seeking.  We do believe that there are images of as yet

7    unidentified victims who need counseling.

8         And to be clear, we certainly already have more than

9    sufficient evidence to charge Mr. Spencer with production of

10   child pornography, and he's already charged with distribution,

11   receipt, possession.  We have plenty of evidence.

12        But just to be clear, we would intend to use any evidence

13   that we found on these devices in furtherance of that

14   prosecution.

15             **THE COURT:**  All right.  So, yes, it could certainly be

16   used against him, provided that it's not otherwise barred.  It

17   could be used for further incrimination.  And maybe that's the

18   calculus that is going on, which is that the likelihood of

19   he -- the further incrimination by the disclosure of the images

20   outweighs the good that can occur if these victims are helped

21   at this point.

22             **MS. DORVALL:**  If I may address that, Your Honor?

23             **THE COURT:**  Of course.

24             **MS. DORVALL:**  At the beginning of the case, we came to

25   the U.S. Attorney and we offered to go through the information

1    that they already have decrypted and possess and identify

2    victims for them.  They declined that offer and stated that

3    they were not interested in that; that they were interested in

4    bigger fish.

5        But we made that offer several months ago.

6           THE COURT:  I don't understand the "bigger fish."

7    What do you mean?

8           MS. GARCIA:  I think that the Defense is referring to

9    a proffer session in which one of the aspects of the discussion

10    was whether Mr. Spencer had any information about larger child

11    pornography production rings.

12        To be clear, though, first of all, I don't remember that

13    conversation at all, what Ms. Dorvall is referring to.  But at

14    a minimum, if the issue is they were offering to identify

15    victims on the devices that we had already gotten into, we

16    don't need that.  We've identified them.

17        We're looking to identify the victims on the devices we

18    haven't gotten into.

19           THE COURT:  I don't think the Government is asking you

20    that once the devices are decrypted, they would like your

21    client's assistance in making identifications.  That's not what

22    is being asked here.  That's not being asked.  That would be a

23    different issue.

24           MS. GARCIA:  That's right, Your Honor.

25           THE COURT:  So I actually -- you wanted to address it.

1   Go ahead.  I don't want to interrupt you.  What else -- what

2   are your concerns?  Or how do you want to respond?  You don't

3   have to say anything or you can say something.

4        **MS. DORVALL:**  I would respond by saying as

5   Mr. Spencer's counsel, I have an excellent idea as to what may

6   or may not be undiscovered evidence at this point, and for that

7   reason, we need to stand firm.

8        **THE COURT:**  You say you have excellent ideas.

9        **MS. DORVALL:**  Without disclosing any client

10  confidences, I believe it is in his best interests to continue

11  in the manner in which we are.

12        **THE COURT:**  I'm sorry?  What?  Would you say that

13  again?

14        **MS. DORVALL:**  Without disclosing any client

15  confidences, I believe this path is best for my client.

16        **THE COURT:**  Okay.  Well, fine.  Okay.

17     So I'd like your view now as to what would be a fine which

18  the -- which the defendant would be able -- financially able to

19  pay.

20        **MS. DORVALL:**  I don't believe there is any fine.  He

21  is 20 years old.  He was in college when he was arrested.  He

22  has no savings, checking, or any real assets.  The vehicle he

23  used was his mother's, and he has no ability to earn as he is

24  in custody.

25        So I don't believe --

1      **THE COURT:**  You say he has no assets?  He has --

2  you're representing to the Court that he has no assets?

3      **MS. DORVALL:**  None that I'm aware of.

4      **THE COURT:**  I have no idea whether he does or not, but

5  you're representing that he has no assets?

6      **MS. DORVALL:**  I don't believe so, Your Honor.  After

7  speaking to his mother as well.  He would have negligible

8  assets at best.

9      **THE COURT:**  What do you mean "negligible"?

10      **MS. DORVALL:**  Personal property that -- the devices

11  that they have in custody were probably his most valuable

12  assets.

13      **MS. GARCIA:**  Your Honor, to be clear, first of all,

14  the defendant has retained counsel.  This isn't appointed

15  counsel.  He's not indigent.

16      **THE COURT:**  I assume his parents are paying for it.

17      **MS. GARCIA:**  That's right.

18      But the broader point here is that this is a fine that is

19  avoidable through compliance with the Court's order.  That is

20  exactly the point.  If he can't pay it, then he should comply

21  today.

22      We have the devices here.  They're ready.  We can take him

23  up to the 20th floor, and he can type in his passwords.

24      So it's not really a matter of whether he has the ability

25  to pay.  That just makes it an adequately-coercive sanction

1    that will induce compliance with the Court's order.

2           **THE COURT:**  Well, you sort of lost me on that one.  If

3    he has no money, how -- if I fine him a hundred dollars a day

4    or a thousand dollars a day, what's the difference?

5           **MS. GARCIA:**  Well, I think it's a lot worse to get out

6    of prison at age 60 with $10,000, $20,000, $30,000 of fine

7    hanging over your head than not.  So that is something that is

8    going to coerce the defendant to comply with the Court's order.

9           **THE COURT:**  It might.  It might.  Though I must say --

10   I must say that I thought what might bring the defendant around

11   to comply with the court order would be that it might have some

12   impact on the length of a prison sentence if, in fact, he's

13   convicted.  I have no idea whether he's going to be convicted.

14          But if that's not enough, if shortening a prison sentence

15   isn't enough to motivate the defendant to provide -- to decrypt

16   the device, I don't think a fine is going to do much.  Maybe.

17   You never know.  In civil contempt, you never know.  I've seen

18   all sorts of things in civil contempt.

19          But, you know, I think -- I think he might very well give

20   some thought and his lawyers may very well give some thought to

21   where do they think this case is going, what is the likely

22   outcome, and then act in his interests to try to achieve the

23   best result in a difficult situation.  That's what lawyers do.

24          But he has -- he has his lawyers choosing, and I assume

25   these are -- are these the lawyers that you want?  Counsel?

1    **THE DEFENDANT:**  Yes, Your Honor.

2    **THE COURT:**  All right.  So he's made that election.

3    And I guess after consulting -- I assume since he's

4    indigent -- you're representing he's indigent; right?

5    **MS. DORVALL:**  Yes, Your Honor.

6    **THE COURT:**  I assume that it is his parents who are

7    retaining you.  You're not Criminal Justice Act lawyers; right?

8    You're not pro bono lawyers?

9    **MS. DORVALL:**  Correct, Your Honor.

10   **THE COURT:**  So I have to assume that the parents also

11   agree that this is the best course of action to take in their

12   child's interest.  I'm assuming that.  I assume the parents are

13   here today.

14   **MS. DORVALL:**  Yes, Your Honor.

15   **THE COURT:**  So they hear and see this and hopefully

16   they understand that this is the course of conduct that they

17   feel comfortable with under the circumstances.

18   **MS. DORVALL:**  Again, Your Honor --

19   **THE COURT:**  But that's up to -- that's up to the

20   defendant and his lawyer.

21   **MS. DORVALL:**  If I may, Your Honor --

22   **THE COURT:**  Pardon?

23   **MS. DORVALL:**  Defense counsel is working with

24   information we can't provide to the Court.

25   **THE COURT:**  Well, that -- that's -- that happens in

1    most cases.  But I don't quite know what that means.  I mean, I

2    don't know whether you are saying to me, you know, "If you knew

3    what I knew, you would understand why we've taken this

4    particular strategy."  I don't know that you're saying that.

5         If there's anything you feel, by the way, that ought to be

6    communicated to the Court and not the Government, you're free

7    to do so.  File under seal.  You can do that.  But you don't

8    have to do that.  You're not required to do that.

9         **MS. GARCIA:**  Your Honor, if there's anything that

10   Defense counsel needs to discuss with the Court ex parte, the

11   Government is happy to step outside.

12        **THE COURT:**  Do you have anything you want to discuss

13   with the Court?  I'll clear the courtroom.

14        **MS. DORVALL:**  Your Honor, my client is not comfortable

15   with that.

16        **THE COURT:**  Okay.  All right.  Anyway, the Court will

17   impose a sanction, $500 a day -- maybe a thousand.  I don't

18   know.  I mean, it probably should be a thousand.  A thousand

19   dollars a day.  However, the Court understands that the

20   defendant may not be able to pay that.  But maybe he can.  I

21   don't know.  It will be out there.  And maybe, on the other

22   hand, it will basically coerce -- I think that's the right

23   word -- the defendant to comply with the Court's order.  That

24   will be the order of the Court.

25        So now where do we go?  I want this case to be tried as

quickly as possible.

        **MS. GARCIA:**  That's fine with the Government, Your Honor.  We could -- we could set a trial date.  To be frank, the Government is intending to supersede to add production charges, so it may make sense to wait to set the --

        **THE COURT:**  Well, I think you're right, but I want you to then proceed as -- I mean, you have to operate on the assumption that whatever is in the files you're not going to have access to.

    And so when will you be prepared to return a superseding indictment?

        **MS. GARCIA:**  Within a month, Your Honor.  Within a few weeks even.

        **THE COURT:**  Okay.

        **MS. DORVALL:**  Your Honor, the Defense intends to file an interlocutory appeal in this case.

        **THE COURT:**  Fine.  You're free to appeal anything.  Do you mean on the Court's order with respect to the contempt?

        **MS. DORVALL:**  Yes, Your Honor.

        **THE COURT:**  Okay.  But that's not going to delay anything because the only thing, if you're successful on the appeal, is that the sanction of a thousand dollars a day would be eliminated.  So it wouldn't delay anything.  It would have no impact on the case.  It would simply address a remedy which was the Court's --

1          **MS. DORVALL:**   We would also be hoping to address the

2     broader issue of the order itself.

3          **THE COURT:**   The what?

4          **MS. DORVALL:**   We would hope to address the underlying

5     order itself.

6          **THE COURT:**   That's fine.   Number one, the Court's not

7     going to grant the right to interlocutory appeal; nevertheless,

8     you may proceed, obviously seeking any remedy that you think is

9     appropriate.   Even if you're correct, again -- I'll say it

10    again -- even if you're correct that the underlying order,

11    which is what I thought you said anyway -- but even if the

12    underlying order were improper, it would not delay the

13    proceedings.   It would not inhibit the Government from getting

14    a superseding indictment.   It would not prohibit the Government

15    from trying this case as soon as possible.

16         So you can have your appeal, but there won't be any stay

17    of the proceedings.   And when I say you can have your appeal,

18    all I'm saying is that whatever appellate remedies are

19    available, you certainly are free to avail yourself of them.

20         So you believe it will take you 30 days to return a --

21         **MS. GARCIA:**   No, not necessarily, Your Honor.   I'm

22    being conservative, but assuming there's grand jury time

23    available within the next two weeks, I don't see why we

24    couldn't do it even sooner.

25         **THE COURT:**   I think there is some urgency in this

1   matter.  I think there is.  So I think it is important to try

2   to bring some resolution of the matter sooner rather than

3   later.

4        So today is May 15th.  What if we were to put it on the

5   Court's calendar on June 6th.

6        Am I hear June 6th?  Yes?

7             **THE CLERK:**  Yes.

8             **THE COURT:**  And let me urge the Government to have

9   returned -- if they are, if they're able to -- an indictment, a

10  superseding indictment, by that date.  And then the defendant

11  will be -- can be arraigned either in here or magistrate court.

12       And on that day, I will set a trial.  Okay?

13            **MS. GARCIA:**  Great.  Thank you, Your Honor.

14            **THE COURT:**  Let me ask the Government where they are

15  in their production of information to the Defense.

16            **MS. GARCIA:**  All of the discovery in the Government's

17  possession has been turned over to the Defense at this point,

18  maybe six months ago.

19            **MS. DORVALL:**  Your Honor, we're actually still waiting

20  for a Blu-ray disk that we had requested.  They sent it, but it

21  was --

22            **MS. GARCIA:**  That's right.  Sorry.  I did forget about

23  that one.  We have a Blu-ray disk of things not related to this

24  charge that I do have a copy of that I will produce.  The copy

25  that we originally produced apparently just miscopied and

1   wasn't able to be played in the Blue-ray.

2          THE COURT:   Okay.   So as a result of the superseding

3   indictment, do you anticipate further discovery?

4          MS. GARCIA:   No, Your Honor.

5          THE COURT:   All right.   So when we return on June 6th,

6   I would like the parties to have their trial calendars and

7   their availability for a trial date.   And until that date, I

8   will exclude time for effective preparation.

9          MS. GARCIA:   Thank you, Your Honor.

10          THE COURT:   Anything further?

11          MS. DORVALL:   No, Your Honor.

12          THE COURT:   Okay.

13          THE CLERK:   What time?

14          THE COURT:   Oh, time?   11:30.

15      Ms. Scott says 11:30, and she's in charge of running

16   everything.

17          MS. GARCIA:   That's fine with the Government,

18   Your Honor.

19          MS. DORVALL:   That's fine with counsel.   Thank you.

20          THE COURT:   All right.   Thank you very much.

21          MS. GARCIA:   Thank you, Your Honor.

22               (Proceedings adjourned at 2:46 p.m.)

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4            I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:   Wednesday, May 30, 2018

8

9     _____

10    Pamela A. Batalo, CSR No. 3593, RMR, FCRR
      U.S. Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25