REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JULIE D. GARCIA (CABN 288624)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone: (415) 436-6758
> FAX: (415) 436-7234
> Julie.Garcia@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. CR 17-259 CRB-2 |
| ) | |
| Plaintiff, ) | UNITED STATES' SENTENCING |
| ) | MEMORANDUM |
| v. ) | |
| ) | |
| RYAN MICHAEL SPENCER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................................2

       A.    The FBI executed a search warrant at the home of Spencer's co-conspirator, Bryan Petersen. ...........................................................................2

       B.    Kik messages from Petersen's phone showed that Spencer and Petersen sought babysitting jobs to access children and to produce and exchange child pornography. .............................................................................3

       C.    The FBI seized Spencer's devices. .............................................................6

       D.    Petersen and Spencer were charged with several child pornography-related offenses. ...........................................................................................6

       ██ ███████████████████████████████████████████████ ..............7

       F.    Recovered Kik messages ████████████████████████ ...................8

       G.    In a forensic interview, Minor 3 confirmed that Spencer had molested him several times.........................................................................................16

       H.    Minor 4 reported ███████████ that Spencer had molested him.......................16

       I.     The Court held Spencer in contempt for refusing to unlock his electronic devices.....................................................................................16

       J.     The grand jury returned a superseding indictment. ..................................17

       K.    Spencer decrypted his devices, revealing images and videos of him molesting Minor 3 and pornographic images of dozens of other children who were in his care.............................................................................17

III.   LEGAL STANDARD...................................................................................................18

IV.    ARGUMENT ................................................................................................................18

       A.    The government agrees with the Guidelines calculations in the PSR. ......18

       B.    An analysis of the 3553(a) factors shows that the parties' agreed-upon sentence is sufficient but not greater than necessary to meet the goals of sentencing. .............................................................................................19

       C.    The Court should set a restitution hearing within 90 days of sentencing. .........25

V.     CONCLUSION.............................................................................................................27

# I.    INTRODUCTION

Ryan Spencer presented a carefully cultivated image to the families for whom he babysat: a CPR-certified camp counselor and tutor who wanted to become an elementary school teacher; an older brother and role model to young boys; a nice young man from a well-to-do family.  Parents liked Spencer, and they trusted him.

But Spencer's goal was not teaching experience or extra spending money.  Behind his sterling resume lay a single-minded obsession: a sexual desire for prepubescent boys.  Spencer schemed to find ways to be alone with the children, to get them naked, and—with at least two boys—to molest them.  He took pictures and videos to document and relive his crimes, storing and cataloging his trophies on an encrypted hard drive and in a password-protected application on his phone.

When he was not seeking out local children, Spencer prowled the dark web for images and videos of other children being sexually exploited.  His collection numbered in the tens of thousands, and he shared his spoils with his co-defendant, Bryan Petersen.  The two men communicated via Kik Messenger nearly every day, almost exclusively about their sexual interest in children, and each defendant helped normalize the behavior for the other.

The FBI arrested Spencer in April 2017, ending his escalating pattern of abuse.  But rather than let his arrest be a wake-up call, accept responsibility, and attempt to atone for his actions, Spencer doubled down.  He refused to unlock electronic devices the FBI had seized under a search warrant, hindering law enforcement's efforts to identify the children he had victimized.

Finally, twenty-one days after being held in contempt of court, racking up a fine of $1,000 a day, Spencer relented and unlocked the devices.  The images and videos they contained confirmed some of the episodes Spencer had bragged about over Kik: his sexual assaults of a ▮▮▮▮▮ boy he was babysitting.  The FBI also found pornographic images of a second boy who, before Spencer's arrest, had ▮▮▮▮▮▮▮▮▮▮ that Spencer had molested him, as well as dozens of images of other boys—some as young as 4 and 5 years old—whose genitals Spencer had photographed while the boys were naked.

Spencer saw the boys in his care as sex objects, and he acted accordingly.  He abused parents' trust to access and victimize their children.  The effects will be felt for years to come.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

The only significant mitigating factor is Spencer's age: 21.  In consideration of his relative youth and the possibility that, with time and treatment, he could change, the government believes that the sentence called for by the Sentencing Guidelines—effectively life in prison—is greater than necessary to meet the goals of sentencing.  For the reasons given below, the government requests that the Court impose the sentence set out in Spencer's Rule 11(c)(1)(C) plea agreement: 30 years' imprisonment, followed by 15 years' supervised release, restitution to the victims in an amount to be determined at a hearing within 90 days of sentencing, and $35,800 in special assessments.  PSR ¶ 4.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The FBI executed a search warrant at the home of Spencer's co-conspirator, Bryan Petersen.

On April 26, 2017, the FBI executed a search warrant at the home of Spencer's co-defendant, Bryan Petersen, in Tiburon, California.  Petersen was present and agreed to be interviewed.  He admitted to agents that he possessed images and videos containing child pornography and that he had exchanged such materials with individuals he had met on the internet, including Spencer.  Petersen explained that, approximately twelve to eighteen months prior, he had ordered an external hard drive from Amazon.com and had it delivered to Spencer, who—based on the two men's prior agreement—then filled the hard drive with child pornography.  Petersen then traveled to Aptos, California, where he met Spencer and retrieved the external hard drive.[1]  Petersen estimated that the external hard drive contained between 10,000 and 100,000 images and videos of child pornography.

Petersen told the FBI that Spencer worked as a babysitter and took photos and videos of some of the children while they were naked.  Petersen stated that he had received many images of naked prepubescent children from Spencer via an internet messenger application called Kik.  Petersen asserted that Spencer was attracted to children as young as four to eight years old and that Spencer claimed to have molested a child while the child was asleep.  Petersen also admitted that he himself had taken photographs of some of the children he babysat while the children were naked, and that he had sent

---

[1] Records from Amazon.com confirm that Petersen ordered a Transcend one-terabyte external hard drive for delivery to Spencer in March 2016.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

those photos to Spencer.

At the end of the interview, Petersen provided the names and contact information of his victims and gave the FBI the passwords for all of his electronic devices.

### B.   Kik messages from Petersen's phone showed that Spencer and Petersen sought babysitting jobs to access children and to produce and exchange child pornography.

Petersen's iPhone contained Kik messages that he had exchanged with Spencer from April 1 to 26, 2017.[2]  These messages revealed that Petersen and Spencer actively solicited babysitting jobs— Petersen in Tiburon and Spencer in Aptos/Santa Cruz—to have physical contact with children, to take sexually explicit photos of them, and to share those photos with each other.

In one Kik exchange, for example, Petersen reported that one of the children he was babysitting was "laying on [Petersen's] lap fondling himself."  Petersen promised that he would "send pics" the next day.  Spencer asked whether Petersen had "anything naked," to which Petersen responded, "Some."  Petersen then sent Spencer a photograph of two prepubescent boys naked in a bathtub (one boy lay face-up, with his penis visible, and the other lay face-down, with his buttocks visible) and additional photographs of prepubescent boys changing into their pajamas, with the focus on one boy's penis.  The men then exchanged the following messages:

| | |
|---|---|
| Petersen: | Well? |
| Spencer: | Hot. |
| | How many pics did you take?? I want em all lol those two are smoking. |
| Petersen: | Haha |
| Spencer: | Nice thou |
| | Was it fun? |
| Petersen: | Yup. |
| | [Minor 11] is super cuddly |
| | [Minor 12] had to be helped |

---

[2] These were not all of the messages Petersen and Spencer had ever exchanged; Kik Messenger stores only the last 500 messages exchanged between users.  *See* Kik, "Message History," https://kikinteractive.zendesk.com/hc/en-us/articles/115006074428-Message-History (last accessed July 2, 2019).  As discussed below, however, the FBI later recovered additional deleted Kik messages.

UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

3

|   |   |   |
|---|---|---|
| 1 |   | [Minor 11] got hurt in the bathtub so I had a good excuse to be in there and [Minor 12] didn't care. |
| 2 |   | [. . .] |
| 3 | Spencer: | Well any other pics u got I would love cause I love those 2 and I'm |
| 4 |   | gunna go to work in an hour |
| 5 | Petersen: | Remind me tonight |

In subsequent exchanges, Spencer sent Petersen several images of prepubescent boys changing after a swim class, including several focusing on the boys' penises. In one of the shots, the naked child looked straight into the camera, apparently catching Spencer in the act of taking the photograph.

Shortly thereafter, Spencer sent Petersen sixteen images of two prepubescent boys changing their clothes in a camp cabin, including several focusing on those boys' penises. When he sent the images to Petersen, Spencer remarked that he had seen one child's "stuff" briefly but that it was difficult because the child was "good at changing [clothes]."

In other exchanges, Spencer described his attempts to get the children he was babysitting to become more comfortable being naked with him and his attempts to spend time in bed with them. For example, on April 15, 2017, the following exchange occurred:

|   |   |   |
|---|---|---|
| 16 | Spencer: | With [Minor 7] and [Minor 8] I guess [Minor 7] is kinda a nudist |
| 17 |   | but not with me bummer |
| 18 | Petersen: | Why not? That's too bad |
| 19 | Spencer: | He I think will like get more comfortable |
| 20 |   | He is pretty cuddly and cute thou |
| 20 |   | Sorry I didn't get new pics |
| 21 |   | He wears a diper [sic] to bed but went in bathroom to change |
| 22 |   | I got to see him in his diper [sic] and cuddle him on couch and in bed for a while |
| 23 |   | I'm hoping I can sit for them over summer |

In another exchange, Petersen lamented to Spencer that he had recently turned down three babysitting jobs, leading Spencer to note that there were plenty of families in Santa Cruz that they could "share":

|   |   |   |
|---|---|---|
| 27 | Petersen: | I turned down like 3 babysitting families recently |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

|  |  |  |
|---|---|---|
| | | Because I leave in july |
| | Spencer: | :(  to where? |
| | Petersen: | UC Santa Cruz |
| | Spencer: | Oh cool |
| | | You can get new families |
| | | Lol |
| | | Lots of local Santa Cruz stuff |
| | | Plus you can share/we can |

In another exchange, the defendants discussed a video that a third party, a minor, had allegedly created by hiding a "spycam" in the bathroom to capture his younger brother masturbating:

|  |  |  |
|---|---|---|
| | Petersen: | I got something to share |
| | | [Minor 13's] brother like 11 via spycam |
| | Spencer: | Share |
| | | He took a spycam vid of his brother? That's hot |
| | | His brother is hot |
| | Petersen: | I'll probably wait til I get home |
| | Spencer: | So can't share rn [right now] ☹ |
| | | Okay |
| | Petersen: | It's on my laptop now |
| | | If it was easier yeah |
| | | He's also super paranoid about it |
| | | Made me swear to a 3 page document of rules about not sharing |
| | | And insists on me trying my best to return the favor with a video of [Minor 12] |
| | Spencer: | ██████████████████ |
| | | But remember I'm exempt cause I know [Minor 13] too |
| | | That is super hot thou |
| | | Can't wait to see it |
| | Petersen: | ████████████████████████ |
| | Spencer: | Ahh |
| | | Spycams are hard to set up |

| | | |
|---|---|---|
| Petersen: | | He stuck it in a trash can and used a toilet paper tube to hide it |
| | | It worked super well actually |
| Spencer: | | Huh |
| | | Like just his bro peeing or? |
| Petersen: | | Peeing then jerking off |
| | | I didn't watch it really, just skimmed stills |
| Spencer: | | Damn that's hot |
| | | How long?  Does he cum |
| | | Gosh I hope [Minor 13] gets more |
| Petersen: | | A couple minutes – I think he does but can't see it as he sits on toilet |
| | | It's the family camera so he doesn't get much opportunity |
| Spencer: | | Ahh so you see his dick and ass thou? |
| | | Bummer |
| Petersen: | | Yup |
| Spencer: | | Hot? |
| Petersen: | | Looked like it |

The video Petersen was referring to in that exchange was later found on Petersen's laptop.

**C.      The FBI seized Spencer's devices.**

On the evening of April 26, 2017, the FBI obtained a search warrant for Spencer's home, which it executed the following morning.  Spencer answered the door to the detached garage that served as his bedroom and, upon realizing that it was the FBI, attempted to shut the door again.  Agents prevented the door from shutting and detained Spencer while they searched his room, where they found, among other things, Spencer's laptop, external hard drive, and iPhone 7.  Spencer's devices were password protected, encrypted, or both.

**D.      Petersen and Spencer were charged with several child pornography-related offenses.**

In April 2017, Petersen and Spencer were charged in criminal complaints with possession of child pornography.  Case No. 17-mj-70631-MAG (Petersen); Case No. 17-mj-70643-MAG (Spencer).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  The next month, a grand jury indicted both defendants for conspiracy to distribute and receive child

2  pornography, as well as substantive counts of distribution, receipt, and possession of child pornography.

3  Case No. CR 17-259 CRB.



UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

**F.    Recovered Kik messages** [REDACTED]

In late August 2017, the FBI recovered from Petersen's phone additional deleted Kik messages between Petersen and Spencer, some dating to early 2016.  These messages show that Petersen and

Spencer communicated via Kik almost daily, and almost exclusively about child pornography, their

sexual interest in young boys, and their attempts to take pornographic images of children in their care.

In January 2016, for example, Spencer bragged about the size of his child-pornography

collection, saying that it was "like 300 gigs [gigabytes]" and noting that he needed a new external hard

drive to store additional images and videos.

The next month, Spencer sent more than a dozen images of child pornography to Petersen,

asserting that the images were "a fraction" of what he had.  When Petersen asked where Spencer

recommended keeping the child pornography, Spencer responded, "Haha an external drive.  Encrypted

up the ass.  That you can smash with a hammer at a moment's notice."  Petersen wrote back that he did

not know how to set up that kind of encryption, and Spencer responded: "I could very easily set it up for

u."  Spencer opined that he had "some flaws in [his] system" for storing child pornography but that he

was "working on it."

In March 2016, Spencer wrote to Petersen that he had gotten a new, one-terabyte hard drive,

which was twice the size of his old one, and that he was "[e]ncrypting it and making it [his] bitch!!"

Spencer offered to let Petersen borrow his old hard drive and again offered to help Petersen create "a

computer vault" for storing his collection.  Petersen responded that he did not yet have a collection on a

hard drive and that he was not sure whether he wanted to continue viewing child pornography or

whether he preferred to stick to images of eighteen-year-olds who looked young:

| | | |
|---|---|---|
| Petersen: | I really don't know what I plan on doing as far as cp [child pornography] | |
| Spencer: | Haha | |
| | I was willing to let you borrow my smaller vault | |
| | And still am once I get the larger set up.  Could even build you a computer vault for it | |
| Petersen: | I know | |
| | I just meant that I currently don't have one and am already prone to anxiety | |
| | And even though it's fun, it's not that much better than just 18 year old thinks | |
| | Twinks | |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

But Spencer persisted, promising he could fill a hard drive for Petersen and that by encrypting it he could help Petersen avoid getting caught:

| Spencer: | Haha I can make you one if you send me a hard drive. |
| | You can destroy it with a hammer and all files really gone. |
| | Takes under a minute. |
| | Accessed externally to computers. |
| | No proof if it's Gone all hosted off "hackable" web |
| Petersen: | Yeah, I know you can do it reasonably safely |
| Spencer: | Yes |

Petersen and Spencer then discussed whether Spencer felt any remorse about collecting and viewing child pornography:

| Petersen: | Do you feel bad or anything after it? |
| Spencer: | Nope |
| | It's all flowing now |
| Petersen: | What does that mean? |
| Spencer: | Like nothing bothers me anymore |
| | Idk [I don't know] |
| | It takes 2 hours or more to encrypt a drive |
| | Just make it secure |
| | Knarly [sic] |
| Petersen: | No self worth difficulties? |
| Spencer: | Nope |
| | I'd say I'm sort of constantly depressed so everything's numb |
| | To escape the darkness you must first understand the darkness and be willing to dive in headfirst |
| Petersen: | But related to cp [child pornography]?  Or other stuff? |
| Spencer: | No, it's been a thing for so long that it just doesn't affect me[.]  I suppose I'm worried legally speaking but otherwise unaffected. |
| | Got to see a bunch of em naked today too |

UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

10

1

2    

And a few others

3    Hehe

4        The following day, Petersen sent Spencer a screenshot from Amazon.com showing the hard

5    drive he planned to purchase.  Spencer said he had the same model and reiterated that, if Petersen sent

6    him the hard drive, Spencer would fill it with child pornography and encrypt it for him.

7        Later the same day, Petersen asked whether Spencer had recently babysat Minor 3.  Spencer

8    responded that Minor 3's family had been "weird" lately and that he only liked babysitting Minor 3

9    "because [Minor 3] lets me molest him."  Spencer then described several occasions on which he had

10   molested Minor 3, who was then ▉ years old.  There are also several other instances in the Kik

11   messages in which Spencer described molesting Minor 3, including the following exchange in which

12   Spencer bragged about

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

At one point, Spencer told Petersen he was thinking about sneaking Viagra ▮▮▮▮▮, leading to the following exchange:

Later messages in which Spencer bragged about molesting Minor 3 appear to have been sent while Spencer was at Minor 3's home:

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED



In August 2016, Petersen again expressed ambivalence about what the two men were doing, saying that he did not want Spencer to send him any more child pornography:

> Petersen:        Also I think I'd prefer it if you didn't send me nudes anymore…Talking about anything and normal pictures are great.
>
> I just like thinking I've given up cp [child pornography] and you sending me some feels like cheating
>
> Thanks

But the two continued to exchange messages about their sex lives via Kik.  By the next month they were talking again about the hard drive of child pornography that Spencer was compiling for Petersen, and Spencer told Petersen about touching an unidentified child while babysitting him overnight:



UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

13

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

In messages from October 2016, Spencer bragged about kissing Minor 4, who was then ████ old, including while pretending to do CPR:

| | | |
|---|---|---|
| Spencer: | I made a xoxo | |
| Petersen: | What | |
| | You kissed him? | |
| Spencer: | He said appropriate | |
| Petersen: | Or give him hugs and kisses | |
| Spencer: | On the face | |
| Petersen: | Cute | |
| Spencer: | He told me he chose loose trunks | |
| | So he could wiggle out of them | |
| | When we played | |
| | When we playr [sic] | |
| | Then later when we were in his bed | |
| | Me kissing all over his face | |
| | He like pulling my face to kiss his lips | |
| Petersen: | What | |
| Spencer: | He had me perform full cpr on him right as mom got home | |
| | Sort of an open mouthed sloppy kiss | |
| | He told me to | |
| | Then sat there quietly looking at me while I talked to mom | |
| | Idk [I don't know] | |
| | Think he wanted me to kiss him | |
| | I'll try it next time | |
| | But he was like all the way | |
| | [. . . .] | |
| | I'm gunna try and kiss him next time | |
| Petersen: | Full on kissing? | |
| | Good luck | |
| | Does he watch you change or look away? | |
| Spencer: | Yes starting as cpr joking | |
| | And xoxo stuff | |
| | Since it's like I'm messing with him | |

1                      He didn't pay full attention when I noticed

2       Petersen:          haha

3                      I don't know how you do it

4      Later that month, Petersen and Spencer set up a date and time for Petersen to meet with Spencer

5 in person to retrieve the external hard drive and look at child pornography together.  Spencer told

6 Petersen that coming at 2 pm would give them sufficient time "to check out the collection.  In depth."

7      In messages from November 2016, Spencer told Petersen that he was babysitting Minor 3 that

8 weekend.  Spencer noted that he could "control and take pictures from [his] iPhone" using his watch so

9 that, if he "left [the phone] in a room propped up," he could take pictures even if he was not in the room.

10 Spencer recommended that Petersen try the same thing with children he was babysitting.

11     In February 2017, Spencer wrote to Petersen that he had just gotten a message from the mother

12 of Minor 8.[7]  Spencer's messages show that he was relieved that, although Minor 8 had reported feeling

13 "violated" by Spencer forcing him to shower and then coming into the bathroom and seeing him naked,

14 Spencer had successfully convinced Minor 8's mother that there was a misunderstanding, and perhaps

15 that Minor 8 was oversensitive:



---

[7] This minor victim's parent submitted a victim impact statement, which is quoted in paragraph 65 of the PSR.

Messages from March 2017—the month before the defendants' arrests—show Spencer teaching Petersen how to use the encrypted drive Spencer had prepared for him.  When Petersen asked how to use the external hard drive with his computer, Spencer responded: "Just install Veracrypt on the pc."  When Petersen asked how to send files that were on the drive, Spencer responded:  "You download 7z on your computer and throw it into a zipped file with a password.  Then you can upload it direct to the web and send the zip file.  If it's encrypted then people can't fuck with it."  Petersen asked whether that method would permit him to send a file directly from the encrypted hard drive, and Spencer responded: "Yep.  When you mount it with Veracrypt it decrypts the files, when you dismount it they re-encrypt."

**G.     In a forensic interview, Minor 3 confirmed that Spencer had molested him several times.**

An FBI forensic examiner interviewed Minor 3, who stated that on several occasions Spencer had rubbed his (Minor 3's) penis without his permission.  Minor 3 said that when he had told Spencer to stop, Spencer had said, "But it feels so good."  ███████████████████████████████████████ .  Minor 3 could not remember exactly how many times Spencer had touched him but estimated that it was approximately five times.  ██████████████████████████████████
████████████████████████████████████

**H.     Minor 4 reported ██████████ that Spencer had molested him.**

A few weeks before Spencer's arrest, another victim, ████████ Minor 4, reported ████ ████ that Spencer had molested him.  ████████████████████████████ .  Minor 4 stated that Spencer had also taken a shower with him, at which time the two were both naked.  As described below, pornographic images of Minor 4 were later found on Spencer's phone.

**I.     The Court held Spencer in contempt for refusing to unlock his electronic devices.**

When the FBI executed a search warrant at Spencer's residence in April 2017, several of the

seized devices were encrypted and/or password-protected, including an Alienware laptop, a Transcend one-terabyte external hard drive, and an iPhone 7.  Spencer, through counsel, refused to provide the passwords to the devices, so in October 2017 the government filed an application under the All Writs Act to compel Spencer to produce them in a fully unlocked and unencrypted state.  A magistrate judge granted the application in March 2018 and ordered Spencer to decrypt the devices.  This Court affirmed the magistrate judge's order in April 2018 and required Spencer to decrypt the devices.

But Spencer continued to refuse to enter his passwords, so the government moved for an order to show cause why Spencer should not be held in contempt.  After a hearing, the Court held Spencer in civil contempt and fined him $1,000 per day until he decrypted the devices.

### J.    The grand jury returned a superseding indictment.

On May 31, 2018, the grand jury returned a superseding indictment charging Spencer with conspiracy to distribute and receive child pornography, two counts of production of child pornography, two counts of distribution of child pornography, receipt of child pornography, and possession of child pornography.  ECF No. 99.  The superseding indictment also contained a criminal contempt charge based on Spencer's refusal to comply with the Court's decryption order.  *Id.*

### K.    Spencer decrypted his devices, revealing images and videos of him molesting Minor 3 and pornographic images of dozens of other children who were in his care.

Twenty-two days after being held in civil contempt, Spencer agreed to decrypt his devices.  His external hard drive contained tens of thousands of images and videos of child pornography downloaded from the internet.  The password-protected application on his iPhone contained thousands more images of child pornography, including at least some of the child pornography had Spencer created himself.  These images were organized into folders named after the victims or the location in which he had photographed them.  For example, folders titled "[Minor 2]" and "[Minor 3]" contained pornographic images of each child.  Other folders appeared to be named after the camps at which the images were taken; these folders contained dozens, and sometimes hundreds, of images of children's genitalia that appeared to have been taken surreptitiously as the boys—some as young as four or five—were attempting to change their clothes in camp cabins, pool locker rooms, and other locations.

1    As Spencer admitted in the plea agreement, the iPhone also contained images of Spencer

2    molesting Minor 3. ████████████████████████████████████████

3    ██████████████████████████████████████████████████

4    ██████████████████████████████████████████████████

5    ████████████████████████████████

6    **III.    LEGAL STANDARD**

7    The Court should impose a sentence sufficient but not greater than necessary to reflect the

8    purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520

9    F.3d 984, 991 (9th Cir. 2008) (en banc).  The Court should begin by calculating the correct sentencing

10   range under the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial

11   benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v.

12   Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the

13   sentencing process," *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).

14   After determining the appropriate Guidelines calculations, the Court should then determine a

15   reasonable sentence in light of the Section 3553(a) factors.  *Carty*, 520 F.3d at 991-93.  These factors

16   include the nature and circumstances of the offense, the history and characteristics of the defendant, the

17   need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, the

18   need to afford adequate deterrence to criminal conduct, the need to protect the public from further

19   crimes from the defendant, and the need to prevent unwarranted sentencing disparities among

20   defendants convicted of similar conduct.  18 U.S.C. § 3553(a).  Sentences falling within the Guidelines

21   range "will usually be reasonable."  *Carty*, 520 F.3d at 994 (quoting *Rita v. United States*, 551 U.S. 338

22   (2007)).  "The Guidelines as written reflect the fact that the Sentencing Commission examined tens of

23   thousands of sentences and worked with the help of many others in the law enforcement community

24   over a long period of time in an effort to fulfill [its] statutory mandate."  *Rita*, 551 U.S. at 349.

25   **IV.    ARGUMENT**

26   **A.    The government agrees with the Guidelines calculations in the PSR.**

27   The PSR correctly concludes that the Guidelines imprisonment range is life, but that this range is

28

UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   cabined by the statutorily authorized maximum sentences for each of the child-pornography offenses (30

2   years for each of the two production counts, and 20 years for each of the other five counts).  PSR ¶ 232.

3   There is no statutory maximum prison sentence on the contempt charge.  *Id.* ¶ 231; 18 U.S.C. § 401.

4   There is a mandatory minimum term of 15 years' imprisonment on the production counts and a

5   mandatory minimum term of 5 years on the distribution, receipt, and conspiracy counts.  PSR ¶ 231.

6        The Guidelines range for a term of supervised release is 5 years to life, and there is a statutory

7   minimum term of 5 years.  *Id.* ¶¶ 233, 235.

8        **B.     An analysis of the 3553(a) factors shows that the parties' agreed-upon sentence is**

9             **sufficient but not greater than necessary to meet the goals of sentencing.**

10        The nature and circumstances of this offense demand a lengthy term of imprisonment.  Spencer

11   sought out, compiled, and obsessed over a child-pornography collection of enormous size: tens of

12   thousands of images and videos.  He delighted in images of children being sexually exploited and shared

13   them gleefully with Petersen, asking for more in return.  His actions re-victimized children who had

14   been sexually abused, victims who are continuously haunted by images permanently documenting their

15   darkest moments.  His actions also helped fuel a multibillion-dollar industry built on the sexual abuse of

16   society's most vulnerable members.  *See* S. Rep. No. 104-358, at 12 (noting that child pornography is a

17   multibillion-dollar business and is said to be organized crime's third-biggest moneymaker, after drugs

18   and gambling).

19        But for Spencer, seeing and fantasizing was not enough.  He is what Congress most feared when

20   it outlawed child pornography: the offender whose "arousal and fantasy fueled by child pornography

21   [was] only a prelude to actual sexual activity with children."  S. Rep. No. 104–358, at 12-13; *see also*

22   *New York v. Ferber*, 458 U.S. 747, 759 (1982) (finding child pornography to be "intrinsically related to

23   the sexual abuse of children").  Spencer began seeking out opportunities to be alone with children.  He

24   honed methods for tricking them into taking their clothes off, and for photographing their genitals while

25   they were naked.  In most instances the children were unaware they were being photographed—but in a

26   significant number of the images the young boys seemed to catch Spencer in the act, their eyes

27   appearing to show confusion and embarrassment.

28   UNITED STATES' SENTENCING MEMORANDUM
     No. CR 17-259 CRB-2

From there, Spencer became bolder, seeking greater thrills.  He found ways to get kids into his lap or to shower with him.  And in time, Spencer began carrying out the fantasies he had developed with the help of child pornography, sexually assaulting at least Minor 3 and Minor 4 several times each.  On some of these occasions, the parents had entrusted their children to Spencer overnight.  It is difficult to fathom the terror, confusion, and physical pain these young boys must have felt when, their parents far away and unable to protect them, an adult man climbed into bed with them and molested them through the night.

As to at least Minor 3, Spencer compounded the horror of the sexual assaults by taking pictures and videos so he could relive the abuse later.  Spencer stored those images and videos—along with pornographic pictures he had taken of the other children—in a digital trophy room on his phone, and he shared them with Petersen.

Spencer did all of this right under the noses of parents, school administrators, and summer camp counselors—shielded from suspicion by the privilege of being handsome, well-spoken, and well-to-do. He looked parents in the eye and promised to care for their children, knowing all the while that his real goal was to prey on them.  His resume, which he provided to potential clients, promised that he had an "[e]xcellent ability to provide ease and comfort to children" and a "[l]ong-term interest in managing physical and social development of children."  *See* Ex. A.  It also boasted that he had first aid and CPR certifications, *id.*, a fact the Kik messages show he used at least once to camouflage his attempts to kiss Minor 4 as merely mock CPR.  Spencer's disarming smile and charm convinced many parents—some of whom were hesitant about engaging a male babysitter,[8] or wanted a male role model for their children,[9] or were single parents in a pinch for childcare,[10] or had kids dealing with a divorce or with special



1   needs[11]—that they could entrust their children to his care.

2       The effects on Spencer's victims are severe and long lasting.  In Victim Impact Statements

3   submitted to the Court under seal, two of the victims' parents detailed how their children have become

4   anxious and fearful of being left alone:



14       Still other parents described their efforts to help their children work through the abuse in therapy.



18       Minor 3's parents, preferring to cut off all connection to Spencer, have not submitted a Victim

19   Impact Statement.  But there can be no doubt that the repeated sexual assaults he suffered at Spencer's

20   hands—including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—have

21   caused him, and will cause him, lasting trauma.  That trauma is likely to be compounded as Minor 3

22   grows older and more fully comprehends what Spencer did to him.  Spencer's decision to victimize

23   Minor 3 was all the more heinous because he knew that ▮▮▮▮▮▮▮▮▮▮▮



1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ████████████████████

4          Spencer's crimes not only harmed the child victims, but also caused the children's parents

5 enormous suffering.  Many wrote of the overwhelming guilt they feel about unwittingly inviting a

6 predator into their homes, and about being unable to protect their children. ██████████████

7 ██████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ███████████          Others said the crimes had deeply shaken their faith in their ability to judge a person's

15 character, making them fearful of ever again hiring a babysitter or sending their child to sleep-away

16 camp. ██████████████████████████████████████████████

17 ██████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████

19 █████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████

22 █████████████████████████████████          Another parent described how the sexual abuse he

23 suffered as a child has haunted him for decades, and how he fears that now his own son will suffer the

24 same fate. ██████████████████████████████████████████

25 ██████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████

28

One of the most striking aspects of this case is Spencer's lack of remorse.  The Kik messages show that he knew child pornography was illegal and that he went to great lengths to avoid getting caught.  But the Kik messages do not show that Spencer ever felt guilty about what he was doing.  Indeed, they show the opposite.  Whereas Petersen sometimes expressed ambivalence and a desire to "give up" child pornography, the Kik messages contain no such indication from Spencer.  When Petersen asked whether Spencer "fe[lt] bad or anything," Spencer said no, that he was "worried legally speaking"—that is, he was concerned about going to prison—but that he was "otherwise unaffected." When Petersen suggested that engaging in sexual activity with Minor 3 might harm the child, Spencer brushed off the assertion, claiming that Minor 3 knew it was their "secret."

Spencer saw nothing wrong with this abuse of the children and claimed they wanted it.  *See, e.g.*, *supra* at 12, 14 ("He just asked me to sleep in his room and cuddle him tonight."; "Think he wanted me to kiss him.  I'll try it next time.").  No doubt contributing to Spencer's perverse view was the barrage of child pornography he viewed each day.  *See* S. Rep. 104-358, at 2 ("[C]hild pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer.").

Nor is it clear that Spencer's outlook has changed since his arrest.  Unlike Petersen—who admitted guilt immediately, turned over the passwords to his devices, gave the FBI the names and contact information of his victims, and expressed great shame that he had allowed himself to reach this point—Spencer held fast to the hope that the digital fortress he had created would prevent the FBI from uncovering the full extent of his crimes.  He did not admit to molesting Minors 3 and 4, and he refused to unlock his devices for weeks after the Court ordered him to do so.

Even now, months after his guilty pleas were entered, scant evidence suggests that Spencer has come to grips with the magnitude of his crimes or that he is interested in taking steps—however small—

toward atoning for them.  Conspicuously absent from the PSR is an apology.  The only words directly from Spencer are twelve short sentences to the Probation Officer about whether he accepts responsibility.  PSR ¶ 74.  About half of these are dedicated to Spencer's claim that he was "used" by Petersen, a claim that, despite the two men's age difference, is inconsistent with the thrust of the Kik messages.  Spencer states generally that he feels "shameful and remorseful about committing the offense," but he says nothing to show that he understands *why* what he did was wrong, or that he regrets the long-term damage he has caused, or that he empathizes with his victims and their parents.  He does not mention his victims at all.  *Id.*

The only significant mitigating factor in this case is Spencer's age.  He is now 21 years old.  He was 19 years old when he was arrested.  And when he began exchanging child pornography with Petersen, Spencer was not yet 18.  Because Spencer started down this dark path while still a teenager, when his brain may not have been fully developed, it is possible that he could, with time, understand the depravity of his actions.  It is possible that, as he matures, and with counseling and close supervision, he could learn to control his behavior.  The Government believes that the life sentence effectively called for by the Guidelines is greater than necessary to meet the goals of sentencing.

In the Rule 11(c)(1)(C) plea agreement, the parties have agreed on a 30-year sentence, followed by 15 years of supervised release.  This sentence reflects the gravity of Spencer's crime and provides just punishment for Spencer's actions, which robbed so many children of their innocence.  *See* 18 U.S.C. § 3553(a)(2)(A).  It also protects the public from further crimes by Spencer, whose criminality was escalating up to the moment of his arrest.  *See id.* § 3553(a)(2)(D).  And this sentence properly balances the other Section 3553(a) factors.

This sentence is also consistent with sentences defendants have received for similar conduct.  For example, last week in the District of Oregon, a 33-year-old school district educational assistant and coach was sentenced to 30 years' imprisonment and a life term of supervised release for sexually abusing a baby and distributing photos via Kik.[12]  Here, given the large number of child victims,

---

[12] *See* "Bandon Educational Assistant and Coach Sentenced to 30 Years in Federal Prison for Sexually Abusing an Infant," *available at* https://www.justice.gov/usao-or/pr/bandon-educational-assistant-and-coach-sentenced-30-years-federal-prison-sexually-abusing/ (last accessed July 3, 2019).

including at least two whom Spencer repeatedly sexually assaulted, as well as the other aggravating factors described above, the 30-year sentence to which the parties have agreed is appropriate.

### C.   The Court should set a restitution hearing within 90 days of sentencing.

Restitution to child-pornography victims is mandatory under 18 U.S.C. § 2259(a) and the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA").  As of the time of Spencer's offense,[13] section 2259(a) provided that a defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3) (1996).  A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."  18 U.S.C. § 2259(b)(4) (1996).

The MVRA also directs the Court to "order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim" of the offense of conviction.  *Id.* § 3663A(a)(3).  Spencer agreed in his plea agreement to pay restitution "for all losses caused by all the schemes or offenses with which [he] was charged in this case," and affirmed that he understood that "the amount of restitution will not be limited to the loss attributable to the counts to which [he pleaded] guilty, . . . ."

As set forth in the PSR, several victims whose images Spencer possessed and who were identified in a report from the National Center for Missing and Exploited Children (NCMEC) have submitted documentation of various losses that they assert were proximately caused by the defendant's

---

[13] On December 7, 2018, 18 U.S.C. § 2259(a) was amended by the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299, 132 Stat. 4383 (2018); however, the amendments are not retroactive.

crimes.  Having considered the materials these victims submitted, the parties have stipulated that restitution should be paid to nine of those victims in the following amounts: "Donatello" of the Feb212 series ($1,000); "Jenny" of the Jenny series ($250); "Jessy" of the Surfer Hair series ($1,500); "Andy" of the SpongeB series ($1,500); "Kauzie" of the RapJerseys series ($1,000); "Pia" of the Sweet Sugar series ($250); "Jack" of the Rap72 series ($1,000); "Tara" of the Tara series ($250), and "Matthew" of the Honeycomb series ($3,000).  *See* ECF No. 133; PSR ¶ 72.[14]

The government anticipates receiving at least one more restitution request.  Specifically, the victim of the BluePillow1 series, identified in the NCMEC report, has submitted notice of the intent to seek restitution but has not yet submitted a restitution request because he/she has only recently obtained counsel and is still assembling the necessary supporting documentation.  Additionally, the government anticipates that it may receive restitution requests from some of Spencer's local victims.

Under 18 U.S.C. §§ 2259(b)(2) (1996), 3663A(d), and 3364(d)(5), if a victim's losses are not ascertainable by 10 days prior to sentencing, the Court shall set a date for the final determination of the victim's losses within 90 days after sentencing.  Because the victims described in the preceding paragraph have not yet submitted materials sufficient to permit the parties to ascertain their losses, the government respectfully requests that the Court reserve ruling on the amount of restitution owed and determine it at a hearing within 90 days of sentencing.

//

//

//

//

//

//

//

//

---

[14] Note that the PSR incorrectly states that the parties agreed to a $25 restitution payment to Jenny, when in fact the parties agreed to a payment of $250.  ECF No. 133.

UNITED STATES' SENTENCING MEMORANDUM
No. CR 17-259 CRB-2

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## V.      CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court accept the parties' Rule 11(c)(1)(C) plea agreement and sentence Ryan Michael Spencer to 360 months' imprisonment, 15 years' supervised release, $35,800 in special assessments, and restitution to the victims in an amount to be determined within 90 days of sentencing.


DATED: July 3, 2019                                    Respectfully submitted,

                                                       DAVID L. ANDERSON
                                                       United States Attorney


                                                       _____/s/ Julie D. Garcia_____
                                                       JULIE D. GARCIA
                                                       Assistant United States Attorney